**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| JOHN T. BROOKS, | : | |
| Debtor. | : | Case No. 07-10611  (JKF) |
| _____ | | |

# MEMORANDUM OPINION

**BY:   JEAN K. FITZSIMON**
**United States Bankruptcy Judge**

Before the Court is the Debtor's Objection (the "Objection") to the proof of claim filed by the law firm of Law & Zaslow, L.L.C. ("Law & Zaslow" or the "Firm"). The proof of claim asserts that the Debtor owes Law & Zaslow $1,550.20 for legal fees performed for the Debtor and based on a default municipal court judgment. See Claim Number 10 (the "Proof of Claim" or the "Claim").  For reasons discussed below, the Court finds that, contrary to the assertion of Mr. Brooks, he did retain the services of Law & Zaslow.  Therefore, the Claim will not be denied based on the allegation that a retainer was necessary in order to create a lawyer-client relationship.  However, the Debtor's objection that Law & Zaslow's Proof of Claim was filed too late is well taken.  The Court is unable to extend the bar date in this Chapter 13 case, and the Firm's Proof of Claim must therefore be disallowed.

## I. BACKGROUND

***The Bankruptcy and Initial Pleadings Related to the Proof of Claim***

Mr. Brooks filed for Chapter 13 bankruptcy protection on February 2, 2007. Neither Schedule D, listing secured creditors, nor Schedule F, listing unsecured creditors, lists Law & Zaslow as a creditor of Mr. Brooks. See Docket Entries Numbers 10 and 12. These schedules have not been amended. The date set for the first meeting of creditors pursuant to section 341 of the Code was April 11, 2007. See Docket Entry No. 26. Therefore, the bar date for filing proofs of claims was July 10, 2007. See Fed. R. Bankr. P. 3002(c).

On July 23, 2008 - some 13 months after the bar date had passed - Law & Zaslow filed Proof of Claim Number 10 in the amount of $1,550.20. This Claim purports to be a secured proof of claim because it is based on a Philadelphia municipal court default judgment for a total amount of $1,550.20 (including $62 fees and court costs) (the "Municipal Court Judgment"). See attachment to Proof of Claim. The Municipal Court Judgment was entered on May 30, 2007. Id. The complaint against Mr. Brooks, filed by Law & Zaslow in municipal court, attached itemized bills for legal services rendered from October 2006 through February 2007. Id. A letter from Mr. Zaslow concerning the Brooks' legal fees and dated February 15, 2007 was also attached to the municipal court complaint. Id.

On August 22, 2008, the Debtor filed an Objection to the Proof of Claim. See Docket Entry No. 161 (the "Objection"). The Objection sought disallowance of the Claim on three bases: 1) that the Proof of Claim was filed after the bar date; 2) that the secured status of the Claim was based on the Municipal Court

Judgment which was entered in violation of the automatic stay (and therefore that, at a minimum, the Claim is unsecured); and 3) that the Debtor has "never been billed for any services." Objection, pg.1. Law & Zaslow replied to the Debtor's Objection on September 4, 2008, asserting that, due to the fact that it "was never given written notice by the Debtor of his bankruptcy . . . [Law & Zaslow] is free of any bar date for filing claims and is not acting in violation of the automatic stay." Reply, pg.1, Docket Entry No. 163. Law & Zaslow further argues that Mr. Brooks was billed for the Firm's services, as is evidenced by the bills attached to the Proof of Claim.

*The November Hearing*

A hearing was held in this matter on November 6, 2008 (the "Hearing"). At that time, the Court heard testimony from Mr. Brooks and Mr. Zaslow (counsel from Law & Zaslow).

At the Hearing, the Debtor asserted that he did not retain Law & Zaslow, citing as evidence the fact that he failed to receive a bill from the Firm. However, when Mr. Brooks was cross-examined, and presented on the witness stand with evidence to the contrary - in the form of bills and letters from the Firm to him - the Debtor did not object to these documents' validity and admitted having received at least some of the invoices. Mr. Brooks also admitted under oath both that he met on several occasions with Mr. Zaslow of Law & Zaslow and that he presented the attorney with papers related to the pending foreclosure of his house.

3

According to Mr. Brooks, Mr. Zaslow sought $250 an hour[1] and a retainer of $3,000 before he would represent him and his wife in court.  The Debtor testified that Mr. Zaslow never provided him with a written document stating what the charges would be.  In other words, there was never a formal fee agreement between Mr. Brooks and Law & Zaslow.  Mr. Brooks did admit on the stand that he recalled various legal work that Mr. Zaslow did for him, including that Mr. Zaslow called Altegra - a mortgagee of the Debtor - and obtained records for Mr. Brooks.  Mr. Brooks even complimented Mr. Zaslow on the work he had done, telling him that he had done a "good job."  The Debtor further testified that he has not paid Law & Zaslow any money although, as mentioned, Mr. Brooks admitted having received bills for legal services rendered.

Mr. Brooks testified that, due to the fact that he considered Law & Zaslow so expensive, he hired another, less expensive lawyer named Jack Bernard, who worked for a flat fee.  At some point around early 2007, Mr. Bernard went into the hospital.  Contrary to the story told by the Debtor, Law & Zaslow continued to work for the Debtor following the hospitalization of Mr. Bernard.  See February 2007 bill of Law & Zaslow, attached as Exhibit A to the Proof of Claim; see also Exhibit R-5, billing entries Jan-11-07 and Jan-29-07.

Mr. Brooks offered no explanation for why he did not include Law & Zaslow on his bankruptcy schedules, even though he received the Firm's legal bills prior to filing for bankruptcy.  Mr. Brooks testified that he believed that a mutual friend

---

[1] Mr. Zaslow pointed out that his rate is actually $200 an hour; the bills submitted as evidence at the Hearing reflect this fact.

of his and Mr. Zaslow's, a Mr. Trachtman, made Mr. Zaslow aware of the Debtor's bankruptcy. However, Mr. Zaslow testified that when Law & Zaslow sued Mr. Brooks in municipal court, the Firm was actually unaware that the Debtor was under bankruptcy protection. Mr. Zaslow testified that once he became aware of Mr. Brooks bankruptcy,[2] the Firm began sending bills only to Mrs. Brooks.[3]

Following the Hearing, Law & Zaslow submitted into evidence its entire legal file (the "File") concerning Mr. and Mrs. Brooks. Counsel for Mr. Brooks had an opportunity to examine this file prior to the Court's reviewing it. The File contains a total of three letters from Mr. Zaslow to Mr. and Mrs. Brooks. The first letter is dated November 28, 2006 and states that Mr. and Mrs. Brooks have failed to pay a $10,000 retainer to the Firm. This letter further states that "I am returning your papers to you herewith as I cannot perform legal services without the required retainer." The second letter, which encloses a bill, is dated February 15, 2007 and states, in relevant portion, "[a]t our last office meeting on January 29, 2007, it was agreed that you would pay . . . a $3,000 retainer for previous work done . . . You never paid . . . No further services of any kind will be hereafter provided to you by our office." The third letter is dated September 11, 2007 and states that "a judgment has been entered against you by our firm for failure to pay for our legal services."

---

[2] Mr. Zaslow was informed of Mr. Brooks' bankruptcy by Mr. Trachtman during lunch. He does not remember the precise date of this lunch, except that it took place after the Firm had filed the action in municipal court against the Debtor.

[3] Mrs. Brooks is not a debtor. Law & Zaslow is apparently unaware of the co-debtor stay. See 11 U.S.C. § 1301.

5

### *The Parties' Arguments*

At the Hearing, counsel for the Debtor argued that Pennsylvania law requires a lawyer to obtain a retainer fee agreement and that because none was acquired here by Law & Zaslow, the firm was never retained by the Debtor. Thus, argues the Debtor, Mr. Brooks incurred no liability for the work performed by the Firm and is not responsible for the $1,550.20 in legal bills at issue.

The Firm counters that, while there was not a formal fee agreement, Mr. Brooks did retain the services of Law & Zaslow; this is why the Firm continued to work on his behalf. Further, contends Law & Zaslow, Mr. Brooks promised to pay the Firm for its legal services.

Following the Hearing, this matter was then taken under advisement. After reviewing the complete file, the docket, and all relevant pleadings, as well as case and statutory law, the Court is prepared to render a decision. As discussed below, the Court makes essentially three findings. First, the Municipal Court Judgment obtained by Law & Zaslow was in violation of the automatic stay and is therefore void. Second, an attorney-client relationship did exist between the Debtor and the Firm. The Proof of Claim will thus not be disallowed on this basis. Third, the Proof of Claim was filed too late. This is not a fact that can be directly remedied by the Court because the bar date in a Chapter 13 case is a strict deadline. Therefore, the Proof of Claim must be disallowed as untimely.

## II. STANDARD ON AN OBJECTION TO CLAIM

Bankruptcy Rule 3001(f) provides that a proof of claim properly filed constitutes *prima facie* evidence of the validity and amount of the claim. In re Patton, 2007 WL 853742, at *3 (Bankr. E.D. Pa. Mar. 16, 2007) (citation omitted). The burden of proof for claims brought under 11 U.S.C. § 502 (a) rests on different parties at different times. In re Reinhart, 2007 WL 2028893, at *4 (Bankr. E.D. Pa. Jul. 11, 2007). Once the creditor has alleged facts sufficient to support its claim, the burden shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. Id. When a debtor objects, it must "produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." In re Allegheny Int'l, Inc., 954 F.2d 167, 173-4 (3d Cir. 1992); see also In re Lammy, 356 B.R. 168, 171 (Bankr. E.D. Pa. 2006). The Threshold question is whether the Debtor has rebutted the *prima facie* effect of the proof of claim. In re Patton, 2007 WL 853742, at *3. Thus the question before the Court when examining each of the Debtor's objections to Law & Zaslow's Proof of Claim is whether he has produced enough evidence to overcome the presumption that the Claim is valid.

## III. THE STATE COURT JUDGMENT IS VOID

As a preliminary matter, the Debtor's initial objection that the Proof of Claim is not a secured claim due to the fact that the underlying Municipal Court Judgment was entered in violation of the automatic stay is correct. The Debtor

filed for bankruptcy of February 2, 2007. On that date, the automatic stay[4] became applicable to this proceeding. See In re Hardy, 39 B.R. 64, 65 (Bankr. E.D. Pa. 1984). The lawsuit was filed by the Firm on April 13, 2007 and judgment was entered on May 30, 2007. See attachment to Proof of Claim. The Municipal Court Judgment was therefore a violation of the automatic stay.[5] It is settled law in the Third Circuit that "actions taken in violation of the stay are void." In re Myers, 491 F.3d 120, 127 (3d. Cir. 2007) (citations omitted). See also Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1206 (3d Cir. 1991) ("[a]bsent relief from the stay, judicial actions and proceedings against the debtor are void *ab initio*.") (citation omitted).[6] Because the Municipal Court Judgment is void, the Proof of Claim is not based on the state court default judgment and

---

[4] The automatic stay prohibits among other things, "the commencement . . . of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . ." 11 U.S.C. § 362(a)(1).

[5] The Court rejects the Firm's argument, made without benefit of citation to law, that the automatic stay does not apply to it because it was not notified of Mr. Brooks' bankruptcy. See Law & Zaslow's Reply Brief at ¶ 3. Courts routinely hold that creditors have violated the automatic stay despite the fact that they have no knowledge of a debtor's bankruptcy. See e.g., Sikes v. Global Marine, Inc., 881 F.2d 176 (5th Cir. 1989); In re Graham, 2002 WL 31045312, at *1 (Bankr. M.D.N.C. Aug.5, 2002) ("The stay is effective regardless of whether a creditor has notice of the filing of the petition."). See also Constitution Bank v. Tubbs, 68 F.3d 685, 691 (3d. Cir. 1995) ("The stay is 'automatic' because it is triggered upon the filing of a bankruptcy petition regardless of whether the other parties to the stayed proceeding are aware that a petition has been filed.").

[6] Both Myers and Maritime allow that a bankruptcy court may annul the stay retroactively pursuant to 11 U.S.C. § 362(d). However, no motion to annul the stay was filed by Law & Zaslow in this case.

8

therefore is not a secured claim.[7] The other bases of the Debtor's objections will be taken in turn.

## IV. AN ATTORNEY- CLIENT RELATIONSHIP DID EXIST BETWEEN THE FIRM AND THE DEBTOR

The Claim Objection, as well as argument made at the Hearing, further contest the validity of the Proof of Claim based on the assertion that Mr. Brooks never retained the services of Law & Zaslow. See Objection, ¶ 4. In other words, the Debtor contends that because he never formally hired the Firm, he is not liable for the $1,550.20 in legal bills. The Court rejects this basis for objecting to the Proof of Claim. A review of the evidence submitted at the Hearing, as well as the testimony elicited from the Debtor at the trial, demonstrate that Mr. Brooks did in fact retain the services of Law & Zaslow and willingly continued to engage those services long after he was informed of the cost.

The Firm's billing invoices submitted into evidence at the conclusion of the Hearing reveal that Mr. and Mrs. Brooks met with Mr. Zaslow a total of three

---

[7] Law & Zaslow also violated the automatic stay by billing *Mrs.* Brooks following her husband's bankruptcy. See 11 U.S.C. § 1301 (providing for a co-debtor stay). However, in order to recover damages for violation of the stay, a creditor's actions must be willful. See 11 U.S.C. § 362(k). The Third Circuit has defined willful as "an intentional or deliberate act done with knowledge that the act is in violation of the stay" and stated that damages are appropriate "upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." In re Atlantic Business and Community Corp., 901 F.2d 325, 329 (3d. Cir. 1990) (citations omitted). See also In re University Medical Center, 973 F.2d 1065 (3d. Cir. 1992). The Debtor has not presented any evidence that the billing of Mrs. Brooks by Law & Zaslow was an intentional or deliberate act in violation of the stay.

times -- an initial meeting on October 9, 2006 and two follow-up meetings, one on November 20, 2006 and one on January 29, 2007.  See Exhibits R-5, R-7, and R-8.  The Debtor confirmed under oath at the Hearing that these meeting took place.  The records also show five phone calls made by Mr. Brooks to the Firm -- the first one on October 16, 2006 and the last one on January 15, 2007.  See Exhibits R-6 and R-8.  When questioned at the Hearing, Mr. Brooks did not deny having made these calls.  In fact, Mr. Brooks acknowledged that Mr. Zaslow had made a diligent effort to contact his mortgage company for him – even telling Mr. Zaslow that he had done a "good job."  The Debtor also acknowledged having received several bills that Law & Zaslow sent to the Brooks' house, although he seemed to believe some were mere duplicates of others.

These activities are not the actions of a man who heard the billing rate of Law & Zaslow at the initial meeting on October 9, 2006 and then simply sought other counsel due to financial constraints -- as Mr. Brooks asserts.  Rather, the story outlined above, coupled with the detailed bills submitted into evidence -- which describe Mr. Zaslow's efforts to stay the foreclosure of the Debtor's home -- tell that Mr. and Mrs. Brooks engaged the firm of Law & Zaslow on October 9, 2006 and continued to use the Firm's services through at least January 2007.  While Mr. Brook's asserts that he dropped the expensive Law & Zaslow for a cheaper lawyer, Mr. Jack Bernard, this contention is also belied by the records, which show that the Debtor met with Mr. Zaslow after Mr. Bernard was admitted to the hospital in early 2007.  See Exhibit R-5, billing entries Jan-11-07 and Jan-29-

10

07.  It is thus clear that, contrary to his objections, the Debtor did employ and benefit from the firm of Law & Zaslow over an extended period of time.

At the Hearing, counsel for Mr. Brooks argued that Mr. and Mrs. Brooks did not and could not have retained Law & Zaslow because they never signed a retainer agreement, which, he suggests, is necessary to retain counsel under Pennsylvania law.  Mr. Brooks' counsel never cited nor has he since provided any legal authority to support this contention.  And the Court has been unable to find any legal support for this claim.

Rule 1.5 of the Pennsylvania Rule of Professional Conduct is relevant here.  It states "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation."  This requirement does not spell the need for a written retainer agreement.  Further, the requirement of Rule 1.5 was satisfied here.  Mr. Brooks admitted under oath to having received all of the Firm's bills.  The first bill is dated November 18, 2006, 40 days from the day Mr. and Mrs. Brooks first met with Mr. Zaslow in his office (on October 9, 2006).  The bills each clearly communicate to the client the "rate of the fee" pursuant to the requirement of Rule 1.5(b), and do so in a reasonable time after the representation was commenced.  <u>See</u> <u>e.g</u>., Exhibit R-8.  The attorneys at Law & Zaslow did everything that was required of them under the Pennsylvania Rules - diligently represented their client, and promptly sent out clear and concise bills.  Hence, the Court concludes that, contrary to his assertions, the Debtor did retain

Law & Zaslow.  Were it not for the logistical problem soon to be discussed, there would be no reason to disallow the Proof of Claim.

## V.  THE PROOF OF CLAIM WAS FILED LATE AND THE BAR DATE CANNOT BE EXTENDED

Notwithstanding the fact that Mr. Brooks retained the services of Law & Zaslow, the Proof of Claim must be denied because it was filed too late.  In order to resolve this matter, we must look to section 502(b)(9) and Rule 3002(c) of the Bankruptcy Code.  Section 502(b)(9) provides, in relevant portion, that a court shall determine the amount of a disputed claim except to the extent that "proof of such claim is not timely filed."  Rule 3002 of the Federal Rules of Bankruptcy Procedure provides that in a chapter 13 case a proof of claim is timely filed "if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code" (with exceptions that do not apply here).  See Fed. Bankr. R. 3002(c).  In this case, the date set for the first meeting of creditors pursuant to section 341 was April 11, 2007.  See Docket Entry No. 26.  Ninety days after April 11, 2007 -- the bar date in Mr. Brooks' bankruptcy case -- was therefore July 10, 2007.  The Proof of Claim was filed on July 23, 2008 by Law & Zaslow.  This was more than 13 months after the bar date.  There is thus no question that the Claim was late.  See Claim No. 10.  The question then becomes, can the Court extend the bar date for cause, given the undisputed testimony that the claimant had no notice of the Debtor's bankruptcy?

The answer is no. Here, case and statutory law are in agreement that a bankruptcy court may not extend the bar date in a chapter 13 case. Bankruptcy Rule 9006(b)(3) provides that the court "may enlarge the time for taking action [under Rule 3002(c)] only to the extent and under the conditions stated in those rules." Pursuant to Rule 9006, a court may only extend the bar date in a Chapter 13 case as prescribed by the specific parameters of Rule 3002(c). None of these parameters allows a court to extend the bar date for circumstances such as these. As one court succinctly put it "[c]ourts that have addressed the interaction of § 502(b)(9), Rule 9006(b)(3), and Rule 3002(c) . . . have consistently concluded that the three provisions reflect Congress' intent to create an absolute bar date for filing claims in Chapter 13 cases." In re Jensen, 333 B.R. 906, 909 (Bankr. M.D. Fl. 2005) (citing In re McNeely, 309 B.R. 711 (Bankr. M.D. Pa. 2004)). See also In re Gardenhire, 209 F.3d 1145, 1151 (9th Cir. 2000) (holding that equitable tolling did not apply to proofs of claim under § 502(b)(9) and noting that most lower courts have generally adopted a "fairly strict readings of Bankruptcy Code and Rules 3002(c)(1) and 9006(b)(3)") (citations omitted); In re Brooks, 370 B.R. 194, 197 (C.D. Ill. 2007) ("the bar date for proofs of claim implemented by Section 502 and Rule 3002(c) is characterized as a strict statute of limitations . . . Even the forgiving concept of excusable neglect, set forth in Rule 9006(b)(1), is eliminated as a basis for extending the claim date in Chapter . . .13 cases.") (citations omitted).

Further, Law & Zaslow's contention that the bar date in this case does not apply to it because the Firm did not receive notice of the bankruptcy or the bar date is incorrect. See Reply to Debtor's Objection to Proof of Claim, pg.1. Courts

have held not only that "Rule 3002(c) is strictly construed as a statute of limitations," but further that "there is no provision . . . for extending the bar date simply because the creditor had no notice of the case." In re Nwonwu, 362 B.R. 705, 707-8 (E.D. Va. 2007). See also In re Watson, 2007 WL 3231529 (Bankr. E.D. Va. Oct. 30, 2007); In re Harding, 2006 WL 5738080 (Bankr. D. Md. Jan. 31, 2006). In sum, the bar date in a Chapter 13 case is a strict and nonnegotiable deadline, whether or not a creditor received notice. The Debtor's objection to the Proof of Claim of Law & Zaslow as untimely will therefore be granted.[8]

## VI. CONCLUSION

For the reasons discussed, the Debtor's Objection to the Proof of Claim of Law & Zaslow will be granted. While Mr. Brooks did engage the Firm, and while the Court certainly does not find the Debtor free from liability with regard to this debt, Law & Zaslow, through no fault of its own, filed its Claim late. The Proof of Claim must therefore be disallowed.

DATED: January 27, 2009.

_____
JEAN K. FITZSIMON
United States Bankruptcy Judge

---

[8] While the Court must disallow the claim of Law & Zaslow as untimely, that does not mean that the Firm cannot collect on the debt owed to it by Mr. Brooks. It should be remembered that the reason that Law & Zaslow did not timely file its Proof of Claim was that it was not notified of the bankruptcy by the Debtor despite the fact that the Debtor knew of his alleged debt to the Firm. The debt to the firm will therefore not be discharged. See 11 U.S.C. § 523(a)(3)(A) (providing an exception to discharge for debts "neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit . . . timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing . . .")

14